**Richard KEARNEY, Appellant,**

v.

**Robert AHMANN, Appellee.**

**No. 59968.**

Supreme Court of Iowa.

April 19, 1978.

Rehearing Denied June 23, 1978.

Randal J. Nigg, of Reynolds, Kenline, Breitbach, McCarthy, Clemens & McKay, Dubuque, for appellant.

David Hammer, of O'Connor, Thomas, Wright, Hammer, Bertsch & Norby, Dubuque, for appellee.

Considered by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

The question here in whether areas of streets on which parking is permitted are part of the roadway defined in our motor vehicle statutes. In instructing the jury on plaintiff Richard Kearney's duty to drive

his motorcycle on the right half of the roadway under § 321.297(1), The Code, 1975, the trial court said, "[T]he portions of the street in which parking is permitted shall not be considered as part of the roadway." Plaintiff excepted to the instruction and now assigns the adverse ruling on his exception as error. We hold the court erred in giving the instruction and reverse and remand.

Plaintiff's motorcycle collided with an automobile driven by defendant Robert Ahmann in what for purposes of the present question was a meeting situation on Clarke Drive in Dubuque on August 30, 1973. The street runs in an east-west direction. Defendant was driving east and plaintiff was headed west. Parking on the block involved is allowed only on the south side of the street. At least two vehicles were parked there at the time of the accident. The street is paved and its width is 27 feet 7 inches from curb to curb.

Defendant's vehicle left 20 feet of straight skidmarks. The skidmark made by the left tires was 10 feet nine inches from the north curb. Therefore, if the centerline of the roadway is equidistant from the curbings, the left side of defendant's car was approximately 3 feet nine inches over the centerline when the collision occurred. Because the left front corner of the car struck the motorcycle, this would put the accident in plaintiff's lane of travel. However, if the roadway is reduced by the width of the area occupied by parked cars adjacent to the south curbing, its width would have been approximately 20 feet, and the jury could find the point of impact was on defendant's half of the roadway thus measured.

A motorist's duty under Code § 321.297(1) is as follows:

A vehicle shall be driven upon the right half of the roadway upon all roadways of sufficient width, except as follows:

a. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement.

b. When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute an immediate hazard.

c. Upon a roadway divided into three marked lanes for traffic under the rules applicable thereon.

d. Upon a roadway restricted to one-way traffic.

The trial court did not believe any of the exceptions applied here. Even though the street was three lanes wide, the lanes were not marked. Therefore the provisions of § 321.306 are not applicable.

The sole question is whether the trial court erred in telling the jury the roadway did not include the area of the street on which parking was permitted.

"Roadway" is defined in § 321.1(50) as "that portion of a highway improved, designed, or ordinarily used for vehicular travel." It is obvious that the entire width of Clarke Drive from curb to curb on the block involved was improved and designed for vehicular travel. It is equally obvious that the entire width was not ordinarily used for vehicular travel. The problem of statutory construction is whether the definition is disjunctive or conjunctive. If it is disjunctive the centerline is based on the curb to curb width. If it is conjunctive the trial court was correct in instructing the jury to deduct the portion of the width upon which parking was permitted.

█ Statutory words and phrases are ordinarily to be construed "according to the context and the approved usage of the language * * *." § 4.1(2), The Code. When the word "or" is used it is presumed to be disjunctive unless a contrary legislative intent appears. *Lahn v. Incorporated Town of Primghar,* 225 Iowa 686, 281 N.W. 214 (1938); 1A Sutherland Statutory Construction § 21.14 (Fourth Ed. 1972). Because § 321.1(50) uses "or" in its definition of roadway, the definition is disjunctive unless the legislature has manifested an intent that it be construed conjunctively.

Well established principles govern our search for legislative intent. See *Iowa Nat. Indus. Loan Co. v. Iowa State Department of Revenue,* 224 N.W.2d 437 (Iowa 1974); § 4.6, The Code.

Nothing in the context of the use of "roadway" in § 321.297(1) suggests its definition is conjunctive. Instead, the exceptions reinforce the idea that the definition is disjunctive. Under § 321.297(1)(b) the centerline of the roadway is not affected by an obstruction, although the duty to drive on the right half of the roadway is modified. Under § 321.297(1)(c), when the roadway is divided into three marked lanes, the centerline is unchanged although the duty to drive on the right half is altered.

■ Similarly, nothing in the legislative history of § 321.297 indicates the definition is not disjunctive. The term "roadway" was introduced into § 321.297 by an amendment effective July 1, 1973. This was one of several amendments adopted to implement the provisions of the Uniform Vehicle Code. See Explanation, H.F. 19, 65th G.A., 1973. Before the amendment § 321.297 provided that, "The operator of a motor vehicle, in cities and towns, shall travel on the right-hand side of the center of the street, unless otherwise provided by law." The change in terminology was prompted in part by recognition that the terms "street" and "highway" as used in the motor vehicle chapter mean "the entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right, for purposes of vehicular traffic." § 321.1(48), The Code. As thus defined a street includes all parts of the right-of-way, including the portion used for parkings, sidewalks and pedestrian travel. See *Blanton v. Curry,* 121 P.2d 125, 135–136 (Cal. App.), rev'd on other grounds, 20 Cal.2d 793, 129 P.2d 1 (1942). Consequently, unless the center of the pavement coincided with the center of the right-of-way it was possible under the former statute that the center of the street would not be the centerline of the area designed or improved for vehicular use. The amendment removed this fortuity

from the statute by narrowing the frame of reference for determining the centerline to the roadway, which is "that portion of a highway improved, designed, or ordinarily used for vehicular travel." § 321.1(50).

■ No evidence exists that the legislature intended the definition of roadway to be conjunctive. If it intended the center of a roadway to shift when parking is permitted along one side of the area improved or designed for vehicular travel, it was essential for it to signify this intention, and it did not do so. We hold the definition is disjunctive. Therefore the trial court erred in instructing the jury that the area of the street in which parking is permitted is not part of the roadway for purposes of determining whether plaintiff complied with his duty under § 321.297(1).

This conclusion is supported by decisions from other jurisdictions under analogous statutes and ordinances. *State v. Larrabee,* 104 Minn. 37, 115 N.W. 948 (1908); *Farm Bureau Mutual Ins. Co. v. Kelley,* 155 Me. 276, 279, 153 A.2d 603, 607 (1959) ("The parked vehicles did not change in any manner the *traveled part* of the way * *."); *Nissen v. Gatlin,* 60 Wash.2d 259, 373 P.2d 491 (1962); *Elswick v. Charleston Transit Co.,* 128 W.Va. 241, 253, 36 S.E.2d 419, 426 (1945) ("The fact that the southern third of the street at times may have been used for parking purposes does not serve to confine the width of the street to the remaining two-thirds lying to the north thereof."). See also *Farrar v. Whipple,* 65 Cal.App. 123, 223 P. 80 (1924); *Winter v. Harris,* 23 R.I. 47, 49 A. 398 (1901); *Fuson v. Cantrell,* 25 Tenn.App. 608, 166 S.W.2d 405 (1942).

Most of the cases relied on by defendant involved non-vehicular obstructions. A motorist's duty in Iowa when confronted with an obstruction is addressed by the exception in § 321.297(1)(b) in a manner contrary to the holdings of the cases cited by defendant. Those cases rest on different statutes and do not aid his position here. The Nebraska cases upon which he relies, where vehicular obstructions were involved, were decided under statutes requiring a motorist to travel on the right half of the highway

"unless it is impracticable" and to yield in meeting situations by giving the other vehicle "at least one half of the main traveled portion of the roadway as nearly as possible." See *Krepcik v. Interstate Transit Lines,* 154 Neb. 671, 48 N.W.2d 839 (1951). The difference in statutes makes the Nebraska cases inapposite.

Because the trial court erred in instructing the jury regarding the location of the center of the roadway in this case, we reverse and remand for new trial.

For guidance of the court on retrial, we hold in accordance with the authorities relied on by defendant that parked vehicles may constitute an "obstruction" within the meaning of § 321.297(1)(b). When such an obstruction exists a motorist's duty to yield is defined in that subsection. We find no basis for saying the legislature intended to differentiate between obstructions of a vehicular and non-vehicular nature.

REVERSED AND REMANDED.